T.C. Memo. 2011-119

UNITED STATES TAX COURT

VICKI M. SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25054-08.                    Filed June 2, 2011.

<u>John W. Nelson</u>, for petitioner.

<u>Timothy S. Sinnott</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Petitioner filed the petition in this case in response to a so-called final appeals determination (notice of determination) concerning petitioner's request for relief from joint and several liability under section 6015[1] for each of her

_____

[1]All section references are to the Internal Revenue Code in
(continued...)

taxable years 2003 and 2004. We must decide whether petitioner is entitled to relief under that section for each of those years. We hold that she is to the extent stated herein.

FINDINGS OF FACT

Some of the facts in this case have been stipulated and are so found.

At the time she filed the petition in this case, petitioner resided in Indiana.

Petitioner, who was born in 1961, received a bachelor of science degree in business administration in 1983 from the University of Evansville in Evansville, Indiana. During college, petitioner took courses in accounting, marketing, statistics, finance, business administration, and quantitative business analysis.

On May 26, 1984, petitioner married Michael Smith (Mr. Smith). (We shall sometimes refer to petitioner and Mr. Smith as the Smiths.) Mr. Smith, who was 49 years old at the time of the trial in this case, had taken some college courses but had not received a college degree.

During their marriage, the Smiths maintained separate bank accounts and deposited their respective earnings into their respective bank accounts. From the time they married until

[1](...continued)
effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

around March 2007, Mr. Smith handled the family's financial affairs, including signing any checks and paying household bills.

As of the time of the trial in this case, neither petitioner nor Mr. Smith had filed for divorce, and petitioner did not intend to file for divorce. At no time during their marriage did Mr. Smith abuse petitioner.

The Smiths have a daughter and a son. At the time of the trial in this case, the Smiths' daughter, who was 21 years old, was a full-time student at a private university in Illinois, which was her primary residence. The Smiths' daughter stayed with petitioner only during summers and other school recesses. During college, the Smiths' daughter received certain financial aid for her college education. In addition, at the time of the trial in this case petitioner and her family were providing an unidentified amount of support to the Smiths' daughter.

As of the time of the trial in this case, the Smiths' son, who was 18 years old and residing with petitioner, was a senior at a private high school in Indiana and intended to attend a private university in Ohio. At that time, the Smiths' son was receiving certain financial aid for his high school tuition, and petitioner was paying approximately $4,000 each school year towards that tuition.

From around December 1986 until January or February 2005, Mr. Smith worked as a patrol officer for the Indianapolis Police

Department (police department).  During 2003 and 2004, Mr. Smith worked as a police officer at least 40 hours each week and often worked significant amounts of overtime.

From around 1992 until at least the time of the trial in this case, petitioner worked for Dow Agro Sciences, L.L.C. (Dow). As of the time of that trial, petitioner was a customer service representative for Dow.  During 2003 and 2004, Dow paid petitioner salaries of $35,237.38 and $37,774.05, respectively. During 2008, Dow paid her a salary of $48,012.

During 2003 and 2004, petitioner sold certain Mary Kay products (Mary Kay activity).  During those years, petitioner had net income from the Mary Kay activity of $3,185 and $650, respectively.

At all relevant times, petitioner maintained through Dow a retirement account under section 401(k) (retirement account). From 1998 through late 2009 or early 2010, petitioner at times borrowed money from her retirement account in order to pay certain expenses, including basic living expenses.

At a time not disclosed by the record during the 1990s, Mr. Smith began operating an unincorporated business (real estate business) in which he (1) acquired and operated certain rental real estate properties in Indianapolis and (2) engaged in so-called flipping, which involved his purchasing certain properties, renovating them, and selling them.  Although Mr. Smith's

real estate business was initially successful, it became unprofitable at an undisclosed time before 2000, which caused the Smiths to incur certain obligations and debts. Because of the unprofitability of Mr. Smith's real estate business, around 2000 the Smiths commenced a bankruptcy proceeding.

In late 2001, Mr. Smith established First Choice Appraisal, Inc. (First Choice), of which he owned at all relevant times all of the outstanding stock. At no time did petitioner have an ownership interest in First Choice. At all relevant times, First Choice was treated for Federal income tax (tax) purposes as an S corporation. During 2003 and 2004, Mr. Smith, in addition to working full time as a patrol officer for the police department, appraised certain residential real estate in Indiana on behalf of First Choice.

At all relevant times, First Choice maintained an unidentified number of bank accounts (First Choice accounts) into which Mr. Smith deposited all of the money that First Choice received. Petitioner did not have access to the First Choice accounts.

During 2003 and 2004, First Choice maintained an office in Indianapolis at which Mr. Smith conducted most of its business. At certain times during those years, Mr. Smith also worked for First Choice at the Smiths' residence where he conducted his work for First Choice primarily on the family's computer. A password was necessary in order to access the First Choice files that

Mr. Smith created and maintained on that computer. Petitioner did not know that password and did not at any time view those files.

During 2003 and 2004, petitioner did not have access to the books and records or the financial statements of First Choice that would have made her aware of the respective amounts of net income that that company was generating during those years. Petitioner was not involved in the preparation of any tax return that First Choice filed and was not shown any such return before or after its filing.

On a date early in 2003 before April 15, the Smiths filed jointly Form 1040, U.S. Individual Income Tax Return (Form 1040), for 2002 (2002 joint return). In that return, they reported taxable income of $103,191, showed tax of $21,658, claimed a withholding tax credit of $6,293, and showed tax due of $15,365. The Smiths did not pay on or before April 15, 2003, the tax shown due of $15,365.

Around August 2003, the Smiths entered into an installment agreement (2003 installment agreement) with the Internal Revenue Service (Service) with respect to their unpaid tax for 2002. Around November 17, 2003, respondent applied a $601.49 overpayment for the Smiths' taxable year 2000 against their remaining unpaid tax for 2002. Pursuant to the 2003 installment agreement,

the Smiths made monthly payments to the Service of at least $1,000 from December 2003 through October 2004.[2]

Because of certain activities (discussed below) in which Mr. Smith engaged on behalf of First Choice while appraising certain residential real estate, around late 2003 or early 2004 the Federal Bureau of Investigation (FBI) began investigating him and that company. In February 2004, the FBI executed a search warrant on Mr. Smith at the Smiths' residence and searched it for about four hours. During that search, Mr. Smith and the Smiths' son were present but not petitioner.

Around July 7, 2004, the Smiths filed Form 1040 for 2003 (2003 joint return).[3] In that return, the Smiths reported, inter alia, (1) wages of $78,057,[4] (2) net income of $3,185 from the Mary Kay activity, (3) net income of $131,718 from First Choice, (4) adjusted gross income of $213,048, and (5) taxable income of $167,235. In the 2003 joint return, the Smiths (1) showed tax of

---

[2]Pursuant to the 2003 installment agreement, in June and October 2004 the Smiths paid to the Service $2,000 and $1,500, respectively.

[3]Mr. Smith hired Jimmie Johnson (Mr. Johnson), a self-employed tax preparer, to prepare their 2003 joint return. The Smiths previously had used H&R Block to prepare their tax returns.

[4]The wages of $78,057 that the Smiths reported in the 2003 joint return consisted of $35,237.38 that Dow paid to petitioner and $42,820.35 that the police department paid to Mr. Smith during 2003. We note that the Smiths rounded to the nearest dollar all amounts that they reported in the respective joint tax returns that they filed for 2003 and 2004.

$37,006 and self-employment tax of $450, (2) claimed a withholding tax credit of $6,219,[5] and (3) showed tax due of $31,680.

Around July 7, 2004, Mr. Smith gave the 2003 joint return to petitioner and asked her to sign it. Although petitioner did not review that entire return before signing it, she was aware (1) that First Choice, an S corporation, generated certain income that was reported in that return and (2) that that return showed a significant amount of tax due. Petitioner asked Mr. Smith how he intended to pay the tax shown due in the 2003 joint return. Mr. Smith responded that he would pay it from the profits that First Choice would generate in the following year.

Petitioner and Mr. Smith signed the 2003 joint return but did not pay the tax shown due in that return when they filed it around July 7, 2004. At the time the Smiths filed the 2003 joint return, petitioner did not suffer from any physical or mental illness.

At a time not disclosed by the record after the Smiths filed the 2003 joint return, petitioner recommended to Mr. Smith that he establish a quarterly payment plan with the Service with respect to any tax estimated to be due on income generated by First Choice in order to reduce the amount that the Smiths would

---

[5]The $6,219 withholding tax credit that the Smiths claimed in the 2003 joint return consisted of $3,121.66 that Dow withheld from petitioner's wages and $3,096.97 that the police department withheld from Mr. Smith's wages during 2003.

owe when they filed a tax return in which they reported such income. Mr. Smith did not do so.

From November 2004 to January 2005, the Smiths did not make the payments required under the 2003 installment agreement. As a result, on January 14, 2005, respondent issued a separate Letter LT11, Final Notice--Notice of Intent to Levy and Your Notice of a Right to a Hearing (notice of levy), to petitioner and Mr. Smith with respect to 2002 and 2003. Respondent included with the notice of levy that respondent issued to petitioner, inter alia, Publication 594, What You Should Know About The IRS Collection Process. That publication indicated that so-called innocent spouse relief might be available to certain taxpayers and directed taxpayers to another publication of the Service discussing such relief.

On January 25, 2005, a grand jury for the U.S. District Court for the Southern District of Indiana (District Court) indicted Mr. Smith and nine other individuals on charges of conspiracy to defraud the United States, wire fraud, and money laundering.[6] That indictment alleged that one or more coconspirators of Mr. Smith purchased certain property for low prices and then sold that property to another coconspirator who pur-

---

[6]The indictment against Mr. Smith and the nine other individuals contained 101 counts. Mr. Smith was indicted on only 2 counts of conspiracy to defraud the United States, 13 counts of wire fraud, and 1 count of money laundering.

chased it for an inflated price (second purchase) and thereafter failed to make the required mortgage loan payments to the lending institution that financed the second purchase.  The second purchase by another coconspirator caused a significant loss to the lending institution because the property purchased was worth considerably less than the outstanding mortgage loan.  The indictment alleged that Mr. Smith provided an inaccurate and inflated appraisal in order to (1) aid certain of his coconspirators in obtaining financing for the second purchase of the subject property at an inflated price and (2) appropriate to himself and his coconspirators the gain realized by the seller in the second purchase.

After Mr. Smith was indicted, he was arrested, released on his own recognizance pending his trial in the District Court, and suspended in January or February 2005 from the police department.

Around April 3, 2005, pursuant to the respective notices of levy issued to petitioner and Mr. Smith, respondent levied against certain unidentified assets of one or both of them and credited $2,412.58 against their tax liability for 2002.

Around April 13, 2005, the Smiths filed Form 1040 for 2004 (2004 joint return).[7]  In that return, the Smiths reported, inter

---

[7]Mr. Johnson, who prepared the Smiths' 2003 joint return, also prepared their 2004 joint return.

alia, (1) wages of $83,941,[8] (2) net income of $650 from the Mary Kay activity, (3) net income of $133,000 from First Choice, (4) adjusted gross income of $219,210, and (5) taxable income of $183,188. In the 2004 joint return, the Smiths (1) showed tax of $41,477 and self-employment tax of $91, (2) claimed a withholding tax credit of $6,740,[9] and (3) showed tax due of $35,805.[10]

Around April 13, 2005, Mr. Smith gave the 2004 joint return to petitioner and asked her to sign it. Although petitioner did not review that entire return before signing it, she was aware (1) that First Choice, an S corporation, generated certain income that was reported in that return and (2) that that return showed a significant amount of tax due. Petitioner asked Mr. Smith how he intended to pay the tax shown due in the 2004 joint return. Mr. Smith responded that he would pay it from the profits that First Choice would generate in the following year.

Petitioner and Mr. Smith signed the 2004 joint return but did not pay the tax shown due in that return when they filed it

---

[8]The wages of $83,941 that the Smiths reported in the 2004 joint return consisted of $37,774.05 that Dow paid to petitioner and $46,166.76 that the police department paid to Mr. Smith during 2004.

[9]The $6,740 withholding tax credit that the Smiths claimed in the 2004 joint return consisted of $3,544.06 that Dow withheld from petitioner's wages and $3,195.74 that the police department withheld from Mr. Smith's wages during 2004.

[10]The tax due shown in the 2004 joint return included an estimated tax penalty of $977.

around April 13, 2005. At the time the Smiths filed the 2004 joint return, petitioner did not suffer from any physical or mental illness.

Around May 16, 2005, pursuant to the respective notices of levy issued to petitioner and Mr. Smith, respondent levied against certain unidentified assets of one or both of them and credited $803.31 against their tax liability for 2002. Around March 27, 2006, respondent applied an overpayment of $5,581 for the Smiths' taxable year 2005 as credits of $1,388.10 and $4,192.90 against the amounts that they owed for 2002 and 2003, respectively. Around April 15, 2006, respondent applied an overpayment of $439 for the Smiths' taxable year 2005 as a credit against the amount that they owed for 2003.

On September 11, 2006, the District Court commenced the trial of Mr. Smith and certain of his coconspirators on the charges in the indictment. On September 22, 2006, the jury unanimously found Mr. Smith guilty of each of the counts against him. On January 26, 2007, the District Court sentenced Mr. Smith to 57 months of imprisonment and 5 years of supervised release. The District Court also ordered Mr. Smith to pay restitution of $1,086,292.80 to certain lending institutions. On March 1, 2007, Mr. Smith reported to the Federal prison at Ashland, Kentucky, to begin serving his prison sentence. As of the time of the trial

in this case, Mr. Smith was to be released from prison around October 25, 2010. As of that time, petitioner expected that Mr. Smith would return to live with her after his release.

Around November 1, 2007, petitioner filed Form 8857, Request for Innocent Spouse Relief (Form 8857), with respect to 2003 and 2004. Petitioner attached to that form Form 12510, Questionnaire for Requesting Spouse (Form 12510). (We shall sometimes refer collectively to Form 8857 and Form 12510 that petitioner filed with respect to 2003 and 2004 as petitioner's innocent spouse relief request.) In petitioner's innocent spouse relief request, she claimed (1) that she had no reason to believe there was a problem with the 2003 joint return or the 2004 joint return and (2) that Mr. Smith handled all of the family finances. At the time she filed petitioner's innocent spouse relief request, petitioner did not suffer from any physical or mental illness.

In petitioner's Form 8857, petitioner claimed total monthly income of $4,559 consisting of monthly wages of $3,559 and monthly gifts of $1,000. In that form, petitioner also claimed total monthly expenses of $4,534 consisting of:

| Claimed Monthly Expense | Amount |
|---|---|
| Federal, State, and local taxes | $326 |
| Rent or mortgage | 1,735 |
| Utilities | 200 |
| Telephone | 60 |
| Food | 200 |
| Car (including car payments and insurance) | [1]1,300 |
| Medical expenses | 84 |
| Life insurance | 19 |
| Clothing | 10 |
| Tuition[2] | 600 |
| Total | 4,534 |

[1]In Form 12510 that petitioner attached to Form 8857 that she submitted to the Service, petitioner claimed total monthly car expenses of $1,500 consisting of $1,200 for automobile payments, $100 for automobile insurance, and $200 for automobile gas and repairs. The record does not establish why petitioner claimed $1,300 in Form 8857 and $1,500 in Form 12510.

[2]The tuition expense that petitioner claimed was for tuition that she paid to the university that the Smiths' daughter was attending.

Around December 27, 2007, Mr. Smith submitted to respondent Form 12508, Questionnaire for Non-Requesting Spouse. In that form, Mr. Smith claimed that he and petitioner maintained separate bank accounts, that petitioner did not have any access to the First Choice accounts, and that petitioner was not involved in any of the business or the financial affairs of First Choice.

On November 19, 2007, respondent issued to petitioner Letter 3661C, Preliminary Determination (preliminary determination), with respect to petitioner's request for relief under section 6015 for 2003. In that letter, respondent determined that

petitioner was not entitled to that relief because she did not file her request for relief within two years of the first collection activity with respect to 2003.

Around December 19, 2007, petitioner submitted to respondent Form 12509, Statement of Disagreement (Form 12509), in response to respondent's determination with respect to her request for relief under section 6015 for 2003 (2007 Form 12509). In that form, petitioner stated:

> I was unaware of the attempts from the IRS to collect the debt. When I found out, my spouse (Michael) assured me that the matter was being taken care of. Michael was the person who received the mail at our house. For many years of our marriage he was responsible for all the household expenses. He had a full-time job and owned a small business whose tax consequences were attached to our personal income tax returns. The tax returns were completed by a third party tax professional. I had no reason to question or review the returns each year, so I signed them in reliance on their accuracy.

> My inability to pay this debt only became a matter of heightened concern this year after Michael was incarcerated. * * * Michael believed he would be able to pay all expenses including any taxes when the investigation (which turned into a case) was settled. He believed [he] would be vindicated, return to work, get the money back that was taken from him and be able [to] make arrangements to settle any outstanding debt. That did not happen. * * * His incarceration has created a financial hardship for me, my son and my daughter. I have been forced to give up our four bedroom house and move to a two bedroom apartment. I cannot make the mortgage payment so the house will be foreclosed on soon.

> I am now attempting to work to resolve this situation. I ask that the IRS grant me Equitable Relief from this debt as it was my reasonable belief that my husband was taking care of any expenses due from his business

including the taxes.  This debt places an extreme financial hardship on me and my and [sic] children who have already lost our home.  This debt places a financial strain on the daily care of my children.  Please also consider the fact that prior to my husband's problems I was fully compliant with the tax laws in every year prior and since.  As you can see by the data provided on Form 12510, this tax debt is more than my annual salary.

This tax debt was not a result of my doings or knowledge.  I relied on my husband and a professional tax preparer.  I have now been faced with financial ruin because of it.  I respectfully request that the IRS grant me Equitable Relief from this debt.

An examiner working for the Service (respondent's examiner) prepared an examination workpaper dated January 9, 2008 (examination workpaper) with respect to petitioner's request for relief under section 6015 for 2004.  In that workpaper, respondent's examiner concluded that petitioner is not entitled to relief under that section for any portion of the underpayment for that year.  The examination workpaper stated, inter alia:

### GENERAL INFORMATION

Denied - She is liable for part of the UP [underpayment].  Per tax ran & attribution worksheet they both did not have enough taxes withheld from their income to pay the bal due.  She is liable for $1180 & he is liable for $33648.  She has no reason to believe he was going to pay.  She knew there was a bal due & she knew they had financial problems because he lost his job & his business closed.  She also knew there was a bal due from the previous yr not paid.  It would not cause an economic hardship to hold her liable.  Her income exceeds her expenses by $625 a month.  They have not been apart 12 months.

**SPOUSE'S RESPONSE**

He just talks about she was not involved in his busi-
ness.  He does not talk about the balance due.

**EVALUATION PROCESS**

**Year 2004**
**IRC 6015(f)**
Liability arose on or after July 22, 1998
Joint return is valid
There is enough information to determine the claim
No OIC accepted

**Eligibility factors:**
Underpayment of tax - relief is not available under IRC
6015(b) & 6015(c)
Filed a joint return
Claim filed timely
Liability unpaid, or RS [requesting spouse] may have
refundable payments
Not a fraudulent return
No fraudulent transfer of assets
No disqualified assets transferred
The underpaid tax is not solely attributable to the NRS
[nonrequesting spouse]
Attribution:   Per the attribution worksheet they both
               did not have enough taxes withheld from
               their income to pay the balance due.
Partial attribution to the NRS.  Continue evaluating
for the portion attributable to the NRS.  Deny relief
for the portion attributable to the RS.

**Tier I factors (limited scope):**
Taxpayers are currently not divorced, widowed or le-
gally separated, and did not live apart prior to the
claim for at least 12 consecutive months

**Tier I factors (limited scope) not met**

**Tier II factors:**
Taxpayers are currently not divorced, widowed    **Against**
or legally separated, and did not live apart
prior to the claim for at least 12 consecutive
months
No economic hardship                             **Against**
Explanation:   The info she provided shows her income

exceeds her expenses by $25 a month but she added her daughters college tuition of $600 a month as an expenses & after a call to her to verify this that [sic] is not a basic living expenses so her income exceeds by $625 a month.

No marital abuse
No poor mental or physical health
No legal obligation established

**Knowledge:**
Background:

RS - Bachelor of Science in Business Administration Business Admin, Finance, Intro Acctg, Marketing, Stastics [sic]

NRS - Some college

Involvement:

RS - She had her own account that her income was deposited into. They had no joint account.

NRS - He had his own account.

Lifestyle changes:      No
NRS's elusiveness:      No
Duty to inquire:        She did not review the return before signing it.
Living arrangements:    Lived together all year.

RS had knowledge or reason to know                    **Against**
Explanation:            She knew there was a balance due. She did not have reason to believe he was going to pay it. She knew they had financial problems when he lost his job & his business was shut down. They also owed the year before & have not paid it.

No significant benefit gained.                        **For**
Explanation:            She did not receive any benefit.
Made a good faith effort to comply with the tax       **For**
laws
Explanation:            She has been compliant
Unique circumstances: No
Not meeting Tier II factors - deny claim
Tier II consideration:  Based on the above facts it is equitable to hold the RS liable for the balance. She did not have reason to

believe he was going to pay.
It would not cause an economic
hardship.  They are still
married/living together.

**Tier II factors not met - deny**
**Claim denied under IRC 6015(f) - full scope**

**CONCLUSION**

2004 - Denied under 6015(f)
She is liable for part bal due.  She did not have
reason to believe he was going to pay.  It would not
cause an economic hardship.  They are still married/
living together.  She states they have been apart since
March 2007 but he is just incarcerated which does not
constitute a separation.

On January 18, 2008, respondent issued to petitioner a preliminary determination with respect to her request for relief under section 6015 for 2004.  In that letter, respondent determined that petitioner is not entitled to that relief because "you [petitioner] did not show it would be unfair to hold you responsible.  You did not prove, that at the time you signed the return, you had reason to believe the tax would be paid.  Also, the documentation you provided does not prove economic hardship."

Around February 8, 2008, petitioner submitted to respondent Form 12509 in response to respondent's determination with respect to her request for relief under section 6015 for 2004 (2008 Form 12509).  That form contained a statement materially identical to the one that petitioner had included in her 2007 Form 12509.  Petitioner's 2008 Form 12509 also included the following additional information with respect to her then current expenses:

Since initially filing for Equitable Relief, it has become more clear the magnitude of my monthly expenses. They include:  Rent $940; Gas & Electricity $150; Food $280; Tithes $360; Auto payment $414; Auto Ins. $120; Auto License Plates $31; Life Ins. $85; Auto Gas & Repairs $200; Medical/Dental Ins. $88; Sears Card $100; Loan $452; Clothing $50; Taxes $534; plus co-pays for any medical/dental appointments, prescriptions, vision exams, glasses and contact lenses, etc.

While I understand the family contribution of my daughter's college expenses is not considered part of my financial hardship, my son is in high school and I have varying expenses that relate to that as well (i.e. his tuition ~$2,000/yr., books $500/yr., etc.)

Respondent assigned petitioner's appeal to an officer (respondent's Appeals officer) in respondent's Appeals Office (Appeals Office).  While that appeal was pending, petitioner submitted to the Appeals Office (1) a pay statement dated April 25, 2008, reflecting petitioner's gross salary (petitioner's salary) from Dow and certain amounts that Dow had deducted from petitioner's salary for the biweekly pay period April 7 to 20, 2008 (April 2008 pay statement) and (2) a spreadsheet showing certain of petitioner's monthly expenses (expenses spreadsheet). The April 2008 pay statement indicated that petitioner's monthly salary was $4,001.  That pay statement showed the following biweekly amounts that Dow had deducted from petitioner's salary:

| Amount | Actual Biweekly Deduction | Prorated Monthly Deduction[1] |
|---|---|---|
| Federal, State, and local taxes | $284.57 | $616.57 |
| Medical, dental, vision, and disability insurance and health care reimbursement account | 137.86 | 298.70 |
| Life insurance | 18.18 | 39.39 |
| ESP loan[2] | 226.09 | 489.86 |
| Contribution to petitioner's retirement account | 110.80 | 240.07 |
| Miscellaneous[3] | 16.15 | 34.99 |
| Total | 793.65 | 1,719.58 |

[1]For convenience, we have prorated the amount that Dow deducted from petitioner's salary in order to determine the amount that Dow would have deducted each month from petitioner's monthly salary.

[2]The ESP loan represented payments that petitioner made to her retirement account in order to repay certain loans that she had made from that account.

[3]The category "Miscellaneous" included two items identified on the April 2008 pay statement as "RHCAP" and "HP MBRSHP/SINGL". The record does not establish what those two items represented or why petitioner paid certain amounts with respect to those items.

In the expenses spreadsheet, petitioner claimed the following monthly expenses:

| Claimed Expense | Amount |
|---|---|
| Rent | $940.00 |
| Gas | 100.00 |
| Electric | 50.00 |
| Car payment | 414.06 |
| Cable | 65.45 |
| Home telephone | 32.00 |
| Cellular telephone | 130.00 |
| Automobile--gas | 200.00 |
| Food | 230.00 |
| Sears card[1] | 75.00 |
| Tithes | 400.00 |
| Total | 2,636.51 |

[1]As of the time of the trial in this case, petitioner had paid the balance on her Sears credit card.

After considering petitioner's appeal, respondent's Appeals officer prepared an appeals case memorandum dated June 27, 2008 (appeals memorandum). In that memorandum, respondent's Appeals officer concluded that petitioner is not entitled to relief under section 6015 for 2003 or 2004. The appeals memorandum stated in pertinent part:[11]

---

[11]In the appeals memorandum, respondent's Appeals officer analyzed petitioner's appeal under the factors set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447 (Revenue Procedure 2000-15). We note that Rev. Proc. 2003-61, 2003-2 C.B. 296 (Revenue Procedure 2003-61), superseded Revenue Procedure 2000-15. Revenue Procedure 2003-61 is effective for requests for relief under sec. 6015(f) that were filed on or after Nov. 1, 2003. Id. sec. 7. Revenue Procedure 2003-61 is applicable in this case because petitioner filed petitioner's innocent spouse relief request around Nov. 1, 2007.

## DISCUSSION AND ANALYSIS

\*          \*          \*          \*          \*          \*          \*

**§6015(f)**

Relief is provided for under §6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and relief is not available under subsection §6015(b) or (c).

**Threshold Factors under IRC §6015(f)**

A joint return was filed.

IRC Sections 6015(b) and (c) are not available.

There was a timely application for relief.

There was no underpayment as of July 22, 1998.

There is no evidence of fraudulent transfers of assets.

There is no evidence of disqualified assets transferred.

There was no evidence of a fraudulent joint return presented.

The EO [examining officer] determined that the threshold factors of §6015(f) WERE NOT met because the taxpayer did not request relief within 2 years of the first collection activity for the 2003 account. She filed for relief November 2007. The notice of intent to levy was mailed to each individual January 2005. The taxpayer meets the threshold factors for the 2004 tax year because collection activities had not yet begun. I agree with the examining officer's determinations. Only the 2004 tax year will be considered further.

**TIER I & TIER II factors of §6015(f)**

The taxpayer DOES/DOES NOT qualify under the TIER I/TIER II factors of §6015(f)

Following are the circumstances under which equitable relief under §6015(f) will ordinarily be granted.

**Tier I**

(1) In cases where a liability reported on a joint return is unpaid, equitable relief under §6015(f) **will ordinarily be granted in cases where _ALL_ of the following elements are satisfied:**

(a) At the time relief is requested, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date relief was requested;

> **Relevant facts from taxpayer & Government...**the taxpayer is still married and did not mention any plans to file for divorce. Her spouse is incarcerated for the next few years in federal prison.

> **This element IS NOT satisfied because...**the taxpayers are married and separate living arrangements due to imprisonment does not qualify as separate households.

(b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. The **requesting spouse must establish** that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability. * * * and

> **Relevant facts from taxpayer & Government...**The taxpayer believed that her

husband would be found innocent, reinstated at his job, and their lives would return to normal.  She signed the 2004 tax return after he was indicted and had been suspended from his job.

**This element IS NOT satisfied because...**the taxpayer knew that the tax liability would not be paid for some time due to the criminal proceedings that were taking place during 2005.  The couple was using their savings to pay for their personal living expenses and his attorney fees.

(c) The requesting spouse will suffer economic hardship if relief is not granted.  For purposes of this section, the determination of whether a requesting spouse will suffer economic hardship will be made by the Commissioner or the Commissioner's delegate, and will be based on rules similar to those provided in §301.6343-1(b)(4) of the Regulations on Procedure and Administration  * * *

**Relevant facts from taxpayer & Government...**The taxpayer is trying to change the family's standard of living so that her income is enough to pay their basic living expenses.  She has moved from the family home to an apartment because she could not afford the mortgage payment.  The taxpayer is experiencing economic hardship with or without this tax liability.

**This element IS satisfied because...**the taxpayer is suffering an economic hardship and is unable to pay her basic living expenses at the present time.

**Tier II**

The Secretary may grant equitable relief under §6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the unpaid liability or defi-

ciency.  The following is a partial list of the positive and negative factors that will be taken into account in determining whether to grant full or partial equitable relief under §6015(f).  **No single factor will be determinative of whether equitable relief will or will not be granted in any particular case.  Rather, all factors will be considered and weighed appropriately.  The list is not intended to be exhaustive.**

**(1) Factors that favor relief.**

**The factors weighing in favor of relief include, but are not limited to, the following:**

(a) Marital status.  The requesting spouse is separated (whether legally separated or living apart) or divorced from the nonrequesting spouse.

> **Relevant facts from taxpayer & Government...**The taxpayer is still married and did not mention any plans to file for divorce.  Her spouse is incarcerated for the next few years in federal prison.

> **This element IS NOT satisfied because...**the taxpayers are married and separate living arrangements due to imprisonment does not qualify as separate households.

(b) Economic hardship.  The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

> **Relevant facts from taxpayer & Government...**The taxpayer is trying to change the family's standard of living so that her income is enough to pay their basic living expenses.  She has moved from the family home to an apartment because she could not afford the mortgage payment.

The taxpayer is experiencing economic hardship with or without this tax liability.

**This element IS satisfied because...**the taxpayer is suffering an economic hardship and is unable to pay her basic living expenses at the present time.

(c) Abuse. The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress.

**Relevant facts from taxpayer & Government...**the taxpayer was not abused by her spouse.

**This factor does not favor relief because...**there is no evidence or allegation of abuse.

(d) No knowledge or reason to know. In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid. * * *

**Relevant facts from taxpayer & Government...**The taxpayer believed that her husband would be found innocent, reinstated at his job, and their lives would return to normal. She signed the 2004 tax return after he was indicted and had been suspended from his job.

**This element IS NOT satisfied because...**the taxpayer knew that the tax liability would not be paid for some time due to the criminal proceedings that were taking place during 2005. The couple was using their savings to pay for their personal living expenses and his attorney fees.

(e) Nonrequesting spouse's legal obligation. The nonrequesting spouse has a legal obligation pursuant to a divorce decree or arrange-

ment to pay the outstanding liability.  This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability.

> **Relevant facts from taxpayer & Government...**The taxpayer is still legally married to her spouse and does not plan to divorce him at this time.

> **The factor does not favor relief because...**there is no legal obligation from a divorce decree that the spouse is to pay the liability.

(f) Attributable to nonrequesting spouse. The liability for which relief is sought is solely attributable to the nonrequesting spouse.

> **Relevant facts from taxpayer & Government...**The taxpayer is liable for a small portion of the liability since her withholding credits were not enough to cover her share of the tax liability. The majority of the tax due is credited to the taxpayer's spouse.

> **This factor favors relief because...**a substantial portion of the tax liability is her spouse's responsibility.

**(2) Factors weighing against relief.**

**The factors weighing against relief include, but are not limited to, the following:**

(a) Attributable to the requesting spouse. The unpaid liability or item giving rise to the deficiency is attributable to the requesting spouse.

> **Relevant facts from taxpayer & Government...**The taxpayer is liable for a

small portion of the liability since her withholding credits were not enough to cover her share of the tax liability. The majority of the tax due is credited to the taxpayer's spouse.

**This factor does not weigh against relief.**

(b) Knowledge, or reason to know. A requesting spouse knew or had reason to know of the item giving rise to a deficiency or that the reported liability would be unpaid at the time the return was signed. <u>This is an extremely strong factor weighing against relief.</u> **Nonetheless**, <u>when the factors in favor of equitable relief are unusually strong, it may be appropriate to grant relief under §6015(f) in limited situations where a requesting spouse knew or had reason to know that the liability would not be paid, and in very limited situations where the requesting spouse knew or had reason to know of an item giving rise to a deficiency.</u>

**Relevant facts from taxpayer & Government...**The taxpayer believed that her husband would be found innocent, reinstated at his job, and their lives would return to normal. She signed the 2004 tax return after he was indicted and had been suspended from his job.

**This factor weighs against relief.**

(c) *Significant* benefit. The requesting spouse has significantly benefited [sic] (beyond normal support) from the unpaid liability or items giving rise to the deficiency. See § 1.6013-5(b).

**Relevant facts from taxpayer & Government...**The taxpayer and her family were paying normal living expenses and the attorney fees with savings after her spouse was suspended without pay from his job.

**This factor does not weigh against relief.**

(d) Lack of economic hardship. The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

> **Relevant facts from taxpayer & Government...**The taxpayer is trying to change the family's standard of living so that her income is enough to pay their basic living expenses. She has moved from the family home to an apartment because she could not afford the mortgage payment. The taxpayer is experiencing economic hardship with or without this tax liability.

> **This factor does not weigh against relief.**

(e) Noncompliance with federal income tax laws. The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

> **Relevant facts from taxpayer & Government...**The taxpayer and her spouse have filed and paid their tax liabilities for the 2005 and 2006 tax years.

> **This factor does not weigh against relief.**

(f) Requesting spouse's legal obligation. The requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

> **Relevant facts from taxpayer & Government...**the taxpayer is still legally married to her spouse and does not plan to divorce him at this time.

**This factor does weigh against relief.**

> **No additional factors** were presented by the tax-payer that would favor relief.

Taking into account all the facts and circumstances in this case, there are hazards that would be faced by both sides should the case be heard at US Tax Court. In an effort to settle both tax years, I offered to relieve her of his liability for the 2004 tax year. She has not accepted the offer.

Because the taxpayer did not establish that it would be inequitable to hold her liable for the 2003 and 2004 tax years, I am recommending that the examiner's position should be sustained. The taxpayer does not meet the statutory requirements for the 2003 tax year and has not proven her case regarding the 2004 tax year.

On July 11, 2008, respondent issued to petitioner the notice of determination. In that notice, respondent denied petitioner's request for relief under section 6015 for each of 2003 and 2004. With respect to 2003, the notice of determination stated in pertinent part:

> You [petitioner] did not file your request timely. IRC section 6015 requires innocent spouse claims to be filed no later than two years after we start collection activity against you. Our records show the date that the IRS first initiated collection activity against you by sending you a due process notice was 1/15/2005.

With respect to 2004, the notice of determination stated in pertinent part: "The information we have available does not show you meet the requirements for relief."

As of April 30, 2010, the Smiths owed a balance of $50,051.55 with respect to 2003. As of that date, the Smiths owed a balance of $59,545.28 with respect to 2004.

At the trial in this case, petitioner claimed that certain of her monthly expenses had changed (revised monthly expenses) since she submitted petitioner's innocent spouse relief request and the expenses spreadsheet.  The revised monthly expenses that petitioner claimed at trial consisted of:

| Claimed Monthly Expense | Amount |
| --- | --- |
| Rent | $1,080 |
| Electric | 90 |
| Cable | 120 |
| Telephone[1] | 187 |
| Automobile, life, and renter's insurance | 127 |

[1]At the time of the trial in this case, petitioner had disconnected her landline home telephone service.  At that time, petitioner and her children had only cellular telephone service.

As of the time of the trial in this case, petitioner had a monthly salary of $4,001 and monthly expenses of $4,004 consisting of:[12]

---

[12]For convenience, we have rounded petitioner's monthly expenses to the nearest dollar.

| Monthly Expense | Amount |
|---|---|
| Federal, State, and local taxes | $617 |
| Rent | 1,080 |
| Electric | 90 |
| Gas | 100 |
| Telephone | 187 |
| Cable | 120 |
| Car (including car payments and gasoline) | 614 |
| Automobile, life, and renter's insurance | 127 |
| Food | 230 |
| Medical expenses (including insurance, dental, vision, and disability) | 299 |
| Retirement account loan payment | 490 |
| Clothing | 50 |
| Total | 4,004 |

As of the time of the trial in this case, petitioner had complied with the tax laws for each taxable year after 2003 and 2004.

OPINION

The parties' only dispute is whether petitioner is entitled to relief under section 6015(f) for her taxable year 2004.[13]

_____

[13]Petitioner concedes that she is not entitled to relief under sec. 6015(b) or (c) for 2003 or 2004.  On brief, petitioner also concedes that, because an appeal in this case would normally lie in the U.S. Court of Appeals for the Seventh Circuit, she is not entitled to relief under sec. 6015(f) for 2003 under Lantz v. Commissioner, 607 F.3d 479 (7th Cir. 2010), revg. 132 T.C. 131 (2009), which we shall follow, see Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), even though we disagree with it, see Pullins v. Commissioner, 136 T.C. ___ (2011); Hall v. Commissioner, 135 T.C. 374 (2010).  In Lantz, the Court of Appeals upheld the validity of sec. 1.6015-5(b)(1), Income Tax Regs., which requires that a requesting spouse file a request for relief no more than two years after the Commissioner of Internal Revenue (Commissioner) first begins collection activity with respect to the year for which relief is requested.

(continued...)

Petitioner bears the burden of proving that she is entitled to relief under that section. See Rule 142(a); <u>Jonson v. Commissioner</u>, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

Section 6015(f) provides:

SEC. 6015.  RELIEF FROM JOINT AND SEVERAL LIABILITY ON JOINT RETURN.

(f)  Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c), the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed procedures in Revenue Procedure 2003-61 that are to be used in determining whether it would be inequitable to find the requesting spouse liable for part or all of the underpayment of tax. That revenue procedure lists seven threshold conditions (threshold conditions) which must be satisfied before the Commis-

[13](...continued)
<u>Lantz v. Commissioner</u>, <u>supra</u> at 486. Petitioner filed Form 8857 more than two years after respondent first began collection activity with respect to 2003.

sioner will consider a request for relief under section 6015(f).
Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297.

Petitioner concedes that she does not satisfy all of the
threshold conditions with respect to the portion of the underpay-
ment for 2004 that is attributable to herself.  See Rev. Proc.
2003-61, sec. 4.01(7).  On the record before us, we find that
petitioner is not entitled to relief under section 6015(f) for
that portion.

The parties agree that petitioner satisfies all of the
threshold conditions with respect to the portion of the underpay-
ment for 2004 that is attributable to Mr. Smith.  Where the
requesting spouse satisfies the threshold conditions, section
4.02(1) of Revenue Procedure 2003-61 sets forth the circumstances
under which the Commissioner ordinarily will grant relief to that
spouse under section 6015(f) in a case, like the instant case,
where a liability is reported in a joint return but not paid.
Petitioner concedes that she does not qualify for relief under
section 4.02(1) of Revenue Procedure 2003-61.  Instead, she
relies on section 4.03 of that revenue procedure in support of
her claim for relief under section 6015(f).

Section 4.03 of Revenue Procedure 2003-61 sets forth the
following factors that are to be considered in determining
whether a requesting spouse is entitled to relief under section
6015(f):  (1) Whether the requesting spouse is separated or

divorced from the nonrequesting spouse (marital status factor); (2) whether the requesting spouse would suffer economic hardship if not granted relief (economic hardship factor); (3) whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the tax liability (knowledge factor); (4) whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement (legal obligation factor); (5) whether the requesting spouse received a significant benefit from the item giving rise to the deficiency (significant benefit factor); and (6) whether the requesting spouse has made a good faith effort to comply with the tax laws for the taxable years following the taxable year to which the request for such relief relates (compliance factor).[14]  Rev. Proc. 2003-61, sec. 4.03(2)(a), 2003-2 C.B. at 298-299.  In making our determination under section

---

[14]Other factors that may be considered under Revenue Procedure 2003-61 are (1) whether the nonrequesting spouse abused the requesting spouse (abuse factor) and (2) whether the requesting spouse was in poor mental or physical health (mental or physical health factor) when he or she signed the tax return (return) or when he or she requested relief.  Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 298.  In the event (1) the nonrequesting spouse abused the requesting spouse or (2) the requesting spouse was in poor mental or physical health when he or she signed the return or when he or she requested relief, the abuse factor or the mental or physical health factor, as the case may be, will be taken into account.  Id.  However, where, as here, (1) the nonrequesting spouse did not abuse the requesting spouse and (2) the requesting spouse was not in poor mental or physical health when she signed the return or when she requested relief, those factors are not taken into account.  Id.

6015(f), we shall consider those factors and any other relevant factors.  No single factor is to be determinative in any particular case, and all factors are to be considered and weighed appropriately.

With respect to the marital status factor, the parties agree that the Smiths remained married as of the time of the trial in this case.

With respect to the economic hardship factor,[15] respondent

_____

[15]In determining whether a requesting spouse will suffer economic hardship, sec. 4.02(1)(c) of Revenue Procedure 2003-61 requires reliance on rules similar to those provided in sec. 301.6343-1(b)(4), Proced. & Admin. Regs.  That regulation generally provides that an individual suffers an economic hardship if the individual is unable to pay his or her reasonable basic living expenses.  Sec. 301.6343-1(b)(4), Proced. & Admin. Regs., provides in pertinent part:

> (ii) Information from taxpayer.--In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--

> (A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;

> (B) The amount reasonably necessary for food, clothing, housing (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);

(continued...)

argues that petitioner "merely testified that she had the expenses listed in her brief, but did not provide any substantiation of those expenses." We reject respondent's argument. In addition to her testimony, which we found to be credible, petitioner submitted (1) Form 8857 in which she claimed certain expenses, (2) the 2008 Form 12509 in which she provided additional information about her monthly expenses, (3) the April 2008 pay statement detailing certain expenses that Dow deducted from her wages, and (4) the expenses spreadsheet in which she detailed certain of her expenses. In evaluating petitioner's request for relief, neither respondent's examiner nor respondent's Appeals officer maintained that petitioner was not entitled to relief because she failed to substantiate her claimed expenses. In fact, respondent's Appeals officer relied on those claimed expenses in reaching the conclusion in the appeals memorandum

---

[15](...continued)

(C) The cost of living in the geographic area in which the taxpayer resides;

(D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

that petitioner was "experiencing economic hardship with or without this tax liability."

We have found that as of the time of the trial in this case petitioner had (1) a monthly salary of $4,001 and (2) monthly expenses of $4,004 exclusive of certain expenses that petitioner argues should be included as part of her basic living expenses[16] and certain other expenses that respondent argues should be excluded as part of her basic living expenses.[17] Thus, we have

_____

[16]Petitioner argues that her claimed monthly expense for food (i.e., $230) is unreasonably low and significantly less than the monthly expense for food (i.e., $537) set forth in the national standards (Service's national standards) that the Service uses in determining whether a taxpayer is suffering an economic hardship. Petitioner also asserts that she is entitled to use the monthly expenses set forth in the Service's national standards for "Food, Clothing and Other Items". We need not and shall not address whether petitioner is entitled to use those monthly expenses. That is because, without including in petitioner's basic living expenses the monthly expenses set forth in the Service's national standards for "Food, Clothing and Other Items", we have found that petitioner's monthly expenses exceed her monthly salary.

[17]Respondent argues that cable television, tithes to petitioner's church, and certain contributions to petitioner's retirement account do not constitute reasonable basic living expenses. We need not and shall not address whether tithes to petitioner's church and certain contributions to petitioner's retirement account constitute reasonable basic living expenses. That is because, without including in petitioner's reasonable basic living expenses those tithes and those contributions, we have found that petitioner's monthly expenses exceed her monthly salary. We have included $120 for cable television in petitioner's reasonable basic living expenses. In doing so, we have rejected respondent's argument that "petitioner's cable expense of $120.00 is not a reasonable basic living expense". Even if we were to exclude cable television from petitioner's reasonable basic living expenses, petitioner's monthly salary would exceed
(continued...)

found that petitioner's monthly expenses exceeded her monthly salary.

Respondent argues that the balance in petitioner's retirement account, which as of the time of the trial in this case was approximately $75,000, "could be used to pay a significant portion of the liabilities." Respondent's argument ignores that petitioner concedes that she is liable for the Smiths' tax liability for 2003, which as of April 30, 2010, was $50,051.55.[18] Respondent's argument also ignores that petitioner has at times borrowed money from her retirement account in order to pay certain expenses, including basic living expenses. We believe that she will be required to continue to borrow from her retirement account in order to meet certain of those basic living expenses.

---

[17](...continued)
her monthly expenses by only $117 and would not change our finding below with respect to the economic hardship factor.

In the alternative, respondent argues that "at best, [petitioner's cable expense] would fall under 'other' or 'miscellaneous' items of the National Standards petitioner relies upon and would not be a separate allowable expense." Respondent's argument is not clear. In any event, we have not included in determining petitioner's reasonable basic living expenses any of the monthly expenses set forth in the Service's national standards for "Food, Clothing and Other Items", see supra note 16, and we need not and shall not address respondent's alternative argument.

[18]The tax liability for 2003 continues to accrue interest until paid. See sec. 6601.

On the record before us, we find that petitioner has carried her burden of establishing that she would suffer economic hardship if relief under section 6015(f) were not granted with respect to the portion of the underpayment for 2004 that is attributable to Mr. Smith.

With respect to the knowledge factor, petitioner must establish that it was reasonable for her to believe that Mr. Smith would pay the tax shown due in the 2004 joint return. See Rev. Proc. 2003-61, sec. 4.02(1)(b), 4.03(2)(a)(iii), 2003-2 C.B. at 298.

Respondent argues that "Based on Mr. Smith's legal difficulties and loss of employment * * * petitioner knew or had reason to know that Mr. Smith would not pay those [tax] liabilities with the return or in a reasonably prompt time."[19]  Petitioner counters that she had no reason to believe that the tax shown due in the 2004 joint return would not be paid.  That is because, according to petitioner, it was reasonable for her to believe

_____

[19]Respondent's argument that petitioner must believe that the tax would be paid in a reasonably prompt time is based on Banderas v. Commissioner, T.C. Memo. 2007-129.  In Banderas, we held that in order for a belief that a liability would be paid to be reasonable the requesting spouse must believe that the funds to pay the liability would be on hand within a reasonably prompt time.  Respondent contends that that holding in Banderas is wrong and that the requesting spouse must believe that the tax would be paid by the later of the date on which the return was filed or the date on which the tax is due to be paid.  We need not revisit our holding in Banderas as respondent invites us to do because, as discussed below, even under that holding we sustain respondent's argument with respect to the knowledge factor.

Mr. Smith when he told her that he would pay that amount out of the profits generated by First Choice in the following year. Petitioner contends that at the time she signed the 2004 joint return

> her husband's business, 1st Choice Appraisal ("1st Choice"), was coming off of an impressive year in 2003 where it had total income of $131,718. Given that its total income in 2004 was $133,000, sufficient income was being produced to pay the tax liability. Moreover, although the indictment against Michael Smith had been filed on January 25, 2005, the trial against him did not commence until September 11, 2006, over one year after petitioner signed the 2004 return. Moreover, the jury verdict against Mr. Smith was not returned until January 17, 2007. Thus, although there was perhaps cause for concern at the time the return was filed, the full extent of Mr. Smith's legal problems was not yet apparent to petitioner when she signed the return. [Cross-refs. omitted.]

On the record before us, we reject petitioner's argument. We have found that around April 13, 2005, petitioner and Mr. Smith signed the 2004 joint return. We have also found that at that time petitioner was aware that (1) around 2000 the Smiths commenced a bankruptcy proceeding; (2) early in 2003 before April 15, the Smiths filed the 2002 joint return in which they showed tax of $21,658, claimed a withholding tax credit of $6,293, and showed tax due of $15,365; (3) the Smiths did not pay on or before April 15, 2003, the tax shown due in the 2002 joint return of $15,365; (4) around August 2003 the Smiths entered into the 2003 installment agreement; (5) around July 7, 2004, (a) the Smiths filed the 2003 joint return in which they showed tax due

of \$31,680 and (b) petitioner was aware that that return showed a significant amount of tax due; (6) the Smiths did not include any payment with the 2003 joint return when they filed it around July 7, 2004; (7) from November 2004 to January 2005 the Smiths did not make the payments required under the 2003 installment agreement; (8) on January 25, 2005, a grand jury for the District Court indicted Mr. Smith on 16 counts; and (9) in January or February 2005 Mr. Smith was suspended from the police department.

On the record before us, we find that it was not reasonable for petitioner to believe at the time she signed the 2004 joint return around April 13, 2005, that First Choice would generate profits in the following year sufficient to pay the tax shown due in that return.[20]

On the record before us, we find that petitioner has failed to carry her burden of establishing that she reasonably believed that the tax shown due in the 2004 joint return would be paid on or before the date on which that tax was due. On that record, we further find that petitioner has failed to carry her burden of establishing that she reasonably believed that the funds to pay the tax shown due in the 2004 joint return would be available

---

[20]We thus reject petitioner's contention that the instant case is materially similar to Downs v. Commissioner, T.C. Memo. 2010-165. We find Downs to be materially distinguishable from the instant case and petitioner's reliance on that case to be misplaced.

within a reasonably prompt time.[21]  On the record before us, we find that petitioner has failed to carry her burden of establishing that she did not know and had no reason to know that the tax shown due in the 2004 joint return would not be paid.

With respect to the legal obligation factor, the parties agree that there is no divorce decree or other agreement that obligates Mr. Smith to pay the portion of the underpayment that is attributable to him.

With respect to the significant benefit factor, the parties agree that petitioner did not receive a significant benefit beyond normal support from the portion of the underpayment attributable to Mr. Smith.

With respect to the compliance factor, the parties agree that petitioner has complied with the tax laws for all years after 2004.

Based upon our examination of the entire record before us, we find that petitioner has carried her burden of establishing that it would be inequitable to hold her liable for the portion of the underpayment for 2004 that is attributable to Mr. Smith. On that record, we further find that petitioner has carried her burden of establishing that she is entitled to relief under section 6015(f) for that portion of that underpayment.

---

[21]See supra note 19.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of petitioner,

<u>Decision will be entered</u>

<u>under Rule 155</u>.